UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| LEROY A. QUINN, JR.,, | CIV 06-1026 |
| Plaintiff, | |
| -vs- | |
| MICHAEL O. LEAVITT, Secretary of Department of Health and Human Services, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff filed this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et. seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that the Indian Health Service ("defendant" or "IHS") discriminated against him because of his age and gender when he was not selected for the position of management trainee. A court trial was held October 14 and 15, 2008. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52.

**FINDINGS OF FACT**

Defendant worked for ("IHS") beginning in 1990 for a brief period of time. He took a position full time with the agency in February 2002 as a procurement technician at the GS-5 pay scale. He worked with the Indian tribes to run their health care programs on the reservations. It was an entry level position in the Aberdeen office. One year later, his supervisor upgraded the position to a GS-6 and gave the plaintiff additional responsibilities. One year later, the position was again upgraded one pay grade to a GS-7. He was earning approximately $33,000 per year.

In 2004, a "management skills team" was formed to look at employment areas that could be improved at IHS. The team or committee set forth recommendations, including to establish trainee positions which would possibly allow current employees to advance to management positions. The committee had no authority to require that any specific recommendations be adopted. As to the trainee positions, the recommendation to select only Aberdeen area IHS

employees for the trainee positions was not adopted by IHS officials. Applicants were sought from throughout the Department of Health and Human Services and, in fact, from the general public, at least as to Native Americans.

On October 5, 2004, the IHS announced two job openings for administrative trainee positions. The job pay scale was GS-7 to GS-11. The positions required the successful applicant to be immediately placed on or "detailed" to one of two reservations to work in a clinical setting as part of the training. More than fifty applications were made.

Plaintiff submitted his application for one of the open positions. He had understood that the positions were limited to current IHS applicants as recommended by the management skills team. He understood that the positions were created for current Aberdeen area IHS employees who wanted to advance within IHS. However, the job announcement states that the positions were open "DHHS-wide." Non-IHS employees did submit applications and were deemed qualified by the human resources department as well as by IHS itself.

Plaintiff was one of the candidates selected for a first interview which took place in January 2005. He was interviewed by a panel. He was notified in February 2005 that he was one of the finalists for a second interview at which he would be required to do a presentation. His second interview took place in April and was conducted by a panel.

One of the original panel members felt that plaintiff was well qualified, despite lack of any college education, and ranked plaintiff as the number one candidate. Tony Peterson, an executive officer of the IHS, was on the panel that selected the successful applicants. Following the second interview, the panel ranked plaintiff as tied with a younger female for the second opening (a younger female was unanimously selected by the panel as the best qualified of all applicants and was offered the first position). Peterson broke the tie in favor of the female applicant. He considered the applicants' knowledge, communication skills, and abilities, in ranking applicants. Although a college education was not required, Peterson decided that a person who pursues higher education demonstrates self-initiative and self-motivation. The female applicant ultimately selected instead of the plaintiff had been pursuing a degree, even while moving around the country. Thus, Cerretta Red Willow-Richards was selected rather than plaintiff.

2

Plaintiff's presentation at the second interview was poor - he was stumbling and reading his power point presentation. He had very little eye contact. Plaintiff contends that it would have been disrespectful to have eye contact with his superiors.

In May 2005, Peterson orally notified plaintiff that he did not receive one of the jobs. Two women who were not IHS employees were awarded the positions. They were ages 38 and 27. Plaintiff was 51 years old at the time.

Plaintiff contends that he was discriminated against because of his age and gender. He asserts that Tony Peterson had a reputation as a "womanizer" and it was an opportunity for Peterson to have an attractive woman in his office. However, one of the successful candidates was detailed to the Pine Ridge reservation and one to the Winnebago reservation. Peterson was planning to retire soon after the selection. When the trainees returned to the Aberdeen office, they were to be supervised by the new executive officer in the Aberdeen office. Peterson retired in June 2007, but he did in fact supervise those two employees when they relocated to the Aberdeen office for a short period of time. I reject the contentions of plaintiff as to the motives of Mr. Peterson.

Plaintiff felt betrayed and hurt and was humiliated when was not hired for one of the trainee positions. Plaintiff did not receive any professional counseling after he was not offered one of the positions. He did not suffer any difficulty in performing his then job as a procurement technician. His co-workers were very supportive.

Plaintiff remained in the contracting department with IHS until October 2005. Had he been hired for one of the trainee positions, he would have continued to be paid at the GS-7 pay grade for one year because he did not yet have the qualifications for the GS-9 pay grade. Plaintiff left his employment with IHS prior to one year from the date of hire for the position he did not receive. He thus did not suffer any damages in terms of pay.

In July 2006, plaintiff was earning approximately $55,000 working for the Tribal Housing Authority for the Sisseton Wahpeton Sioux Tribe in Sisseton, South Dakota. He is the director of that agency and now earns $64,000.

No one of the interviewing panels and no IHS official ever made any mention of gender or age. Neither age no gender played any part in who was selected for the trainee positions. The

notations on exhibit K as to gender and years of birth were not made by any IHS employee but were made in the EEOC process. Any person listed on exhibit K could have been hired for the two positions. Education may be substituted for experience in hiring decisions made by the IHS. Troy Bad Moccasin made it clear that, if any IHS executive had requested information on the gender or ages of applicants, he would not have supplied it since he knew that such factors cannot be used in making employment decisions. The fact that the announcement seeking applicants was entitled "Merit Promotion" is immaterial since every IHS job announcement contains such heading.

The final decision not to select plaintiff for one of the two positions was made by Don Lee, the IHS Aberdeen Area Director until his retirement in February of 2007. Mr. Lee has an impressive background and was an impressive witness. He made the decision to not accept the recommendation to limit applicants to present IHS employees. He received no complaints of any kind (until plaintiff's EEOC filing) about the process used.

Plaintiff filed a complaint with the EEOC. He thereafter filed the instant action. Plaintiff seeks monetary damages, retirement credits, and expungement from his employment record of his EEOC and this complaint. He earns more than he would be earning had he been selected for the trainee position and does not wish to be reinstated to an IHS position.

## CONCLUSIONS OF LAW

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA protects individuals who are at least forty years old. See 29 U.S.C. § 631. When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait actually motivated the employer's decision." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). To demonstrate such, the plaintiff must show that age "actually played a role in [the employer's decision making] process and had a determinative influence on the outcome." Id.

"Title VII prohibits employers from discriminating based on sex with respect to compensation, terms, conditions, or privileges of employment." Jenkins v. Winter, 540 F.3d

4

742, 748 (8th Cir. 2008); 42 U.S.C. § 2000e-2(a)(1). Title VII encompasses failure to promote claims. See Ross v. Kansas City Power and Light Co., 293 F.3d 1041, 1046 (8th Cir. 2002).

Plaintiff has two methods available to prove the defendant discriminated against him. First, the plaintiff can utilize the "mixed motives" method described by the United States Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). In a mixed motives case, the plaintiff must produce direct evidence that age or gender played a motivating part in the defendant's decision not to offer defendant one of the management trainee positions. Id. at 258. If the plaintiff can produce such direct evidence of discrimination, "the burden then rests with the [defendant] to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor." EEOC v. Liberal R-II School District, 314 F.3d 920, 922 (8th Cir. 2002) (quoting Price Waterhouse, 490 U.S. at 276 (O'Connor, J., concurring)).

There is seldom a "smoking gun" in employment discrimination cases. Consequently, the Supreme Court has developed a second, indirect method of proof by which a plaintiff can prove intentional age discrimination. The second method available to the plaintiff is the McDonnell Douglas three-part burden shifting analysis, which is used solely for cases devoid of direct evidence of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973). This framework is necessary in light of the fact that, in employment discrimination cases, "'[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes' because a shrewd employer will not leave a trail of direct inculpatory evidence for the plaintiff to bring into court." Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996) (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). The McDonnell Douglas analysis applies equally to age discrimination claims under the ADEA and gender discrimination claims under Title VII. Stewart v. Independent School Dist., 481 F.3d 1034, 1042-43 (8th Cir. 2007).

Since plaintiff proffered no "direct evidence of discrimination on the basis of gender or age, we apply the framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to determine whether [he] has established a prima facie case." Bearden v. International Paper Co., 529 F.3d 828, 831 (8th Cir. 2008). To establish his

claim of intentional age or sex discrimination through circumstantial evidence, plaintiff must show:

> (1) at the time he was passed over for a position, he was a member of a protected class, male or over the age of 40;
> (2) he was otherwise qualified for the position that he had applied for;
> (3) he suffered an adverse employment action in that he was not hired for the position; and
> (4) circumstances permit an inference of discrimination in that the defendant subsequently hired a younger person or a female to fill the position.

Loeb v. Best Buy Co., Inc., 537 F.3d 867, 872 (8th Cir. 2008), and Bearden v. International Paper, 529 F.3d at 831. Plaintiff did make such a showing.

The defendant is then required to proffer a legitimate, nondiscriminatory reason for failing to hire the plaintiff. Loeb v. Best Buy, 537 F.3d at 872 and Bearden v. International Paper, 529 F.3d at 831. Defendant did make such a showing.

Finally, the burden shifts back to plaintiff to establish that this nondiscriminatory reason for failing to select him for one of the positions was pretextual and that age or gender was a motivating factor in the employment decision. Gross v. FBL Financial Services, Inc., 526 F.3d 356, 360 (8th Cir. 2008), and Bearden v. International Paper, 529 F.3d at 832. Plaintiff has failed to do so. There is no evidence that the failure to select plaintiff was based on reasons that were pretexts. Defendant had good and valid reasons to not select plaintiff and made the decisions without any consideration of age or gender.

The Eighth Circuit has reminded courts:

> In the usual course of events, an employer will hire the most qualified candidate, and an employer, not a federal court, is in the best position to "[i]dentify[ ] those strengths that constitute the best qualified applicant." *Duffy v. Wolle*, 123 F.3d 1026, 1037-38 (8th Cir.1997). We have oft repeated the maxim that the federal courts do not sit as super-personnel departments assessing the business judgments made by employers. *E.g., Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir.1998). Instead, the courts address "'[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment,'" which is "'whether the plaintiff was the victim of intentional discrimination.'" *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 955 (8th Cir.2001) (quoting Reeves, 530 U.S. at 153, 120 S.Ct. 2097).

Ross v. Kansas City Power & Light Co., 293 F.3d at 1047. I do not find any evidence that the plaintiff was a victim of intentional discrimination of any kind.

## ORDER

Now, therefore, based on the foregoing,

IT IS ORDERED that judgment be entered in favor of the defendant and against the plaintiff. Costs shall be taxed.

Dated this 30th day of October, 2008.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
                    DEPUTY
    (SEAL)